37107/01245/MHW/JFM

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IGNACIO ALVAREZ, | |
| Plaintiff, | Case Number  13 cv 703 |
| v. | Judge Sara L. Ellis |
| WEXFORD HEALTH SOURCES, INC., et al., | |
| Defendants. | |

## MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT BY DR. CARTER, DR. FUNK, DR. OBAISI, & WEXFORD HEALTH SOURCES, INC.

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., ARTHUR FUNK, M.D., IMHOTEP CARTER, M.D., and SALEH OBAISI, M.D. (collectively, the "Wexford Defendants"), by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of their Fed. R. Civ. P. 56.1 Motion for Summary Judgment, state as follows:

## I.  INTRODUCTION

Plaintiff, IGNACIO ALVAREZ, an inmate, currently serving a sentence for counts of murder and intent to murder, filed a complaint against two of his former doctors at Stateville Correctional Center, Dr. Carter and Dr. Obaisi, their supervisor, Dr. Funk, and their employer, Wexford Health Sources, Inc. ("Wexford"), claiming civil rights violations related to, *inter alia*, failing to adequately treat an ankle sprain.  See Joint 56.1 Statement of Undisputed Facts ("SOF") at ¶¶ 12-13.  Undisputed medical testimony finds that the medical providers complied with all applicable standards of care in treating the Plaintiff's ankle injury.  (SOF at ¶ 42). Against Wexford, the Plaintiff alleges that Wexford "is more concerned in cost-cutting policies" than treatment.  (SOF at ¶ 13).  However, the undisputed evidence show that during the one year

that the Plaintiff sought treatment for his ankle sprain, he secured no fewer than ten (10) medical appointments, three (3) x-rays, crutches, special medical permits, constant pain medication, steroid pain medication injections, an ankle brace, and offsite consultation with an independent orthopedic surgeon. (SOF ¶¶ 19-36). Simply, this is a case where the Plaintiff did not like the treatment that several doctors provided for his ankle injury, and he is now suing them because he wanted them to provide medical services, such as a MRI, that no doctor, including his independent orthopedic surgeon at UIC, said that he needs. (SOF at ¶ 31).

Based on the foregoing facts, the evidentiary record establishes that the Wexford Defendants' conduct did not rise to the level of a civil rights violation. Construing all uncontroverted material facts in the light most favorable to the Plaintiff, his claim for deliberate indifference fails as a matter of law. Accordingly, this Honorable Court should enter an Order granting Summary Judgment in favor of the Wexford Defendants and against the Plaintiff.

## II. MATERIAL FACTS

The Wexford Defendants incorporate their Joint 56.1 Statement of Undisputed Facts, and accompanying exhibits, filed concurrently with the Wexford Defendants' Motion for Summary Judgment and supporting Memorandum of Law.

## III. ARGUMENT

### A. Venue and Jurisdiction are proper

The Wexford Defendants have consented to this Court's jurisdiction and venue by admission. (SOF at ¶¶ 8-9).

### B. Summary Judgment is proper in this matter

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly

supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.    Plaintiff Has Not Established the Elements of Deliberate Indifference**

    1.    *Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has unequivocally failed to create any issue of material fact to defeat this Motion for Summary Judgment. In order to prevail on a claim under § 1983, the Plaintiff must show that each Doctor acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proving deliberate indifference rests on the Plaintiff. *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that each of the Doctors actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or

risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. See *Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even tortious recklessness is not enough. *Id*. Unsuccessful medical treatment, neglect, nor medical malpractice is sufficient to support a claim for deliberate indifference. See *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

   2.   <u>The Plaintiff has not shown that Dr. Funk had any personal involvement in this case</u>

   The Plaintiff has failed to establish that Dr. Funk ever provided him with any medical care. It is "well established that Section 1983 creates a cause of action based on personal liability that is predicated upon fault." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). Individual liability under 42 U.S.C. § 1983 requires <u>direct and personal involvement in the situation that causes injury to an inmate</u>. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (emphasis added). Dr. Funk is Wexford's Regional Medical Director for the Northern Region of Illinois. (SOF at ¶ 3). He is not an on-site physician at Stateville like Dr. Carter and Dr. Obaisi. (¶¶ 4-5).

   Dr. Funk's undisputed testimony is that he does not independently recall having ever treated the Plaintiff for complaints related to his ankle. (SOF at ¶ 37). As per his custom and practice, if Dr. Funk had treated the Plaintiff, he would make a notation of the examination in the Plaintiff's medical chart. (SOF at ¶37). Dr. Funk reviewed the Plaintiff's medical chart and found no notation authored by him. (SOF at ¶ 37). Accordingly, Dr. Funk did not provide any treatment to the Plaintiff.

   To the degree that the Plaintiff's Complaint is arguing that Dr. Funk is liable based on his job as supervisor to Stateville's on-site Medical Directors, Dr. Carter and Dr. Obaisi, those claims

are also barred under Section 1983. See *Pacelli v. Devito*, 972 F.2d 871, 877 (7th Cir. 1992) (finding that the doctrine of *respondeat superior* liability does not apply to § 1983 actions).

Finally, as to the Plaintiff's allegation that Dr Funk, "has the ability to establish a comprehensive course of treatment for the Plaintiff," there is no evidence that Dr. Funk has that ability or responsibility. (SOF at ¶ 13, 43-44). Rather, Wexford has general treatment guidelines outlining common courses of care that could be provided to specific groups of patients, but Dr. Funk explained that each independently licensed medical provider is required to rely on his or her own medical judgment when providing care. (SOF at ¶43). In short, the Plaintiff's on-site treating physician develops the plan of care, not Dr. Funk. Accordingly, the Plaintiff's claims for deliberate indifference fail against Dr. Funk because he lacked any direct, personal involvement in the Plaintiff's medical care.

3.    *The Plaintiff's ankle sprain is not a serious medical need*

The Plaintiff has not shown that he suffered from a serious medical need that posed an excessive risk to his health. A serious medical need is an objective, life threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Furthermore, in order to establish that he has a serious medical condition, a plaintiff must present evidence that indicates his condition has risen to a level that posed a threat of serious harm to his present health or to his future health. *Stevenson v. Scholz*, 07-3108, 2009 U.S. Dist. LEXIS 22945, *23, 2009 WL 790961 (C.D. Ill. Mar. 23, 2009).

Here, the Plaintiff's medical condition is an ankle sprain. (SOF at ¶ 20). There is nothing in the records indicating that the Plaintiff's ankle sprain was so severe that it was an "objective, life threatening situation". *Greeno*, 414 F.3d at 653. This is especially true when the Plaintiff's

medical records note several times that he voiced no complaints of pain or discomfort regarding the ankle. (SOF at ¶ 19, 33, 35). As such, the Plaintiff's ankle sprain does not constitute a serious medical need. Therefore, his deliberate indifference claim against the Wexford Defendants fails at the outset.

4. _The Plaintiff has not shown that Dr. Obaisi possessed subjective knowledge of an excessive risk to the Plaintiff's health._

The Plaintiff has failed to establish that Dr. Obaisi possessed the required subjective knowledge of a risk to the inmate's health and safety. Each defendant in a deliberate indifference claim must be subjectively aware of a serious medical need. *Estelle,* 429 U.S. at 107; *Sellers*, 41 F.3d at 1102; *Vance,* 97 F.3d at 991. In order to establish subjective knowledge, the Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993, citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Dr. Obaisi became Stateville's Medical Director on August 2, 2012 - the month before the Plaintiff stopped treating his ankle. (SOF at ¶ 5). Dr. Obaisi saw the Plaintiff only one time for his ankle - September 26, 2012. (SOF at ¶ 35). After Dr. Obaisi completed his examination, he charted that there were no acute findings regarding the ankle. (SOF at ¶ 35). Dr. Obaisi testified that it is his custom and practice to record all subjective complaints that a patient makes of pain or functional mobility concerns involving the ankle in the patient's medical progress notes. (SOF at ¶ 40). If a medical note makes no mention of pain or functional mobility concerns, then the patient did not make any such subjective complaints to Dr. Obaisi. (SOF at ¶ 40). Thus, Dr. Obaisi lacked any subjective notice of complaints regarding the Plaintiff's ankle during his one appointment with this Plaintiff. Therefore, the Plaintiff's deliberate indifference claim against Dr. Obaisi fails as a matter of law, on this point alone.

5.      *The Doctors Did Not Display the Required Culpability Because Their Actions in Treating the Plaintiff Complied with the Applicable Standard of Care*

The Plaintiff's Deliberate Indifference Claim against the Doctors fails because the undisputed facts show that the Doctors complied with all applicable community standards of medical care in treating the Plaintiff. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for a claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is not entitled to demand specific care, nor the best care possible, but rather, he is entitled to reasonable measures to meet a substantial risk of serious harm to him. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (emphasis added).

Three medical doctors gave testimony in this matter. Each of the three doctors testified that, in their professional medical opinions, he complied with all applicable community standards of medical care in treating this Plaintiff. (SOF at ¶ 42). The Doctors then reviewed the Plaintiff's entire medical chart regarding all medical care rendered by any Wexford-employed

healthcare personnel and, again, all three doctors testified that all Wexford-employed personnel complied with the standard of care.  (SOF at ¶ 42).

There is no medical testimony in the record disputing those statements.  There is no medical testimony showing that no minimally competent medical professional would have responded differently to the Plaintiff's complaints.  Accordingly, the Plaintiff's deliberate indifference claims fail because there is no evidence that any medical treatment failed to comply with the applicable community standard of care.

       6.    *The Plaintiff has not established a pattern of neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect by the Doctors in order to support his claim for constitutional deliberate indifference.  The Seventh Circuit requires that when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered.  See *Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999).  A plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor.  *Id.* A pattern of neglect must be evident in the record.  See *Id.*; see also, e.g., *Guttierez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997)(holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference and a court must examine the entire record, not just isolated events).

During the one (1) year that the Plaintiff sought treatment for his ankle injury, he received no fewer than ten (10) medical appointments, three (3) x-rays, crutches, special medical permits, constant pain medication, steroid pain medication injections, an ankle brace, and outside consultation with an independent orthopedic surgeon.  (SOF ¶¶ 19-36).  On the day of his injury, medical technicians rushed to the basketball court, rendered treatment, and took him to the

infirmary for observation. (SOF at ¶ 19). He was admitted overnight, monitored, and given Acetaminophen 325 mg tablets for his pain. (SOF at ¶ 19). Overnight, he voiced no complaints of pain or discomfort. (SOF at ¶ 19).

The very next day, Dr. Carter performed a medical examination and sent the Plaintiff out for x-ray imaging to see if there was a fracture of the ankle. (SOF at ¶ 20). The x-ray was negative for fracture, and Dr. Carter diagnosed the Plaintiff with an ankle sprain, and gave him a medical permit allowing him to lay-in his bunk and recuperate and, also, asked the IDOC to let the Plaintiff use crutches. (SOF at ¶ 20). The Plaintiff used the crutches for four-to-eight weeks. (SOF at ¶ 20). Before returning to his cell, the medical staff gave the Plaintiff pain medication to take back to his cell that he could administer himself when needed. (SOF at ¶ 21).

On December 1, 2011, the Plaintiff complained of ankle pain and swelling to a nurse and she scheduled the Plaintiff for an appointment with one of the staff physicians, Dr. Dubrick, for later that week. (SOF at ¶ 23). Dr. Dubrick performed a medical evaluation and ordered a new x-ray on the ankle. (SOF at ¶ 23). That x-ray was, again, negative for a fracture. (SOF at ¶ 24). Dr. Dubrick gave the Plaintiff additional pain medication. (SOF at ¶ 23).

The Plaintiff continued complaining of ankle pain, despite two x-rays showing no evidence of a fracture, so Dr. Carter re-examined the Plaintiff on January 31, 2012. (SOF at ¶ 25). Dr. Carter diagnosed the Plaintiff as having post-traumatic tendonitis and ordered an injection of steroid pain medication for the Plaintiff. (SOF at ¶ 25). Three days later, the Plaintiff received an injection of steroid pain medication in order to alleviate his pain complaints. (SOF at ¶ 26).

However, on March 15, 2012, the Plaintiff complained of pain again, so Dr. Carter contacted Wexford and asked that Wexford approve an outpatient consultation at the UIC

Medical Center with an orthopedic surgeon. (SOF at ¶ 28). Wexford promptly approved Dr. Carter's request on March 19, 2012. (SOF at ¶ 28). On June 7, 2012, the Plaintiff was sent out to UIC and an orthopedic surgeon performed a battery of tests on the Plaintiff. (SOF at ¶ 29). The Plaintiff asked the UIC doctor to give him an MRI but the UIC doctor declined and ordered an x-ray instead. (SOF at ¶ 31). Based on the continuing assessment of a soft-tissue injury, the UIC doctor sent the Plaintiff back to Stateville with a paper listing several exercises that he could perform in his cell to alleviate his pain. (SOF at ¶ 30).

On June 14, 2012, the Plaintiff saw a medical provider in Stateville's Health Care Unit who noted that he was walking on his left ankle without distress. (SOF at ¶ 32). The plan of treatment was to monitor the ankle. (SOF at ¶ 32). A follow-up appointment two weeks later noted no acute findings regarding the ankle. (SOF at ¶ 33). The Plaintiff was given pain medication and told to follow-up as needed regarding his ankle. (SOF at ¶ 34). His next appointment was August 25, 2012 (SOF at ¶ 34) to be measured for an ankle brace, per UIC's recommendation. (SOF at ¶ 34). On September 26, 2012, the Plaintiff saw Dr. Obaisi who noted no acute findings regarding the Plaintiff's ankle. (SOF at ¶ 35). The September 26, 2012 medical appointment was the Plaintiff's last treatment for his ankle. (SOF at ¶ 36).

As to any claims that the medical providers neglected his complaints of pain, the Plaintiff testified that the providers always gave him sufficient pain medicine:

> Q: Was there a period of time after your injury but before you started to feel better where you needed pain meds but you didn't have access to them?
>
> A: I believe they always prescribed me enough. (SOF at ¶ 22).

Plaintiff's deliberate indifference claim fails because, rather than showing neglect, the evidence in this case shows that the Plaintiff received continuous and copious medical treatment.

7.     *The Doctors had no role in scheduling the Plaintiff's medical appointments or ordering his ankle brace.*

The Doctors had no role in scheduling the Plaintiff's medical appointments or ordering his ankle brace.  Thus, they had no role in any alleged delayed treatment.  Liability under 42 U.S.C § 1983 requires direct and personal involvement in the situation that causes injury to an inmate.  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  Accordingly, to the degree that any delays in scheduling medical appointments or services caused the Plaintiff's injury, these Doctors are not liable under Section 1983.

Here, Dr. Carter and Dr. Obaisi testified that they do not personally schedule an inmate's medical referrals to outside medical facilities (like UIC) or even his internal M.D. sick call appointments at Stateville.  (SOF at ¶ 39).  Rather, once the Doctor placed an order in the chart for an outside appointment or follow-up appointment, he relied on other members of the health care unit staff to perform their jobs and schedule those appointments.  (SOF at ¶ 39).  Similarly, Dr. Carter and Dr. Obaisi testified that once they placed an order for an ankle brace, they have no further role in ensuring that the prisoner receives the brace.  (SOF at 38).  Instead, after they place the order, the prisoner's procurement of the medical device is in the hands of other members of the medical staff and the Stateville Correctional Officers.  (SOF at ¶ 38).  This was explained by the Doctors in their respective declarations and Plaintiff was free to conduct further discovery on this issue and/or name additional parties that he thought culpable.  Finally, to the degree that any medical appointment was missed due to Stateville being on a "lockdown", the IDOC-staff, and not Wexford-staff, make the decision to place Stateville on lockdown.  (SOF at ¶ 18).

It is neither uncommon nor improper for the Medical Director at a facility as large as Stateville to rely on other individuals to perform tasks such as scheduling.  As noted by the Seventh Circuit, "[b]ureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's

job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The Plaintiff cannot sue the Doctors for failing to do another employee's job. Therefore, this Court should grant summary judgment in favor of the Doctors.

> 8. <u>No expert or verifying medical testimony established a causal connection between the Doctors' alleged deliberate indifference and Plaintiff's alleged damages</u>

The Plaintiff produced no medical testimony establishing his claims that the alleged inadequate or delayed medical treatment detrimentally caused him harm. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 1999); see also *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately); *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996)("an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed").

Here, testimony was secured from three medical doctors: Dr. Carter; Dr. Obaisi; and Dr. Funk. There is no testimony from *any* physician that any alleged scheduling delays, delays in receiving his ankle brace, or even the medical treatment decisions made by the Wexford Defendants, proximately caused the Plaintiff's claimed damages or injuries. Rather, the Plaintiff is relying on his own self-serving opinion about what his medical treatment should have been, rather than what was medically-indicated.

As to any claims that he suffered injury because of a delay in receiving his ankle brace, verifying medical evidence is clearly needed because the Plaintiff's own testimony cuts against

his claim. The Plaintiff testified that once he secured that very same ankle brace, he voluntarily and without first discussing his plan with a medical provider, stopped wearing it and allowed his permit to use the brace to expire because "it wasn't working". (SOF at ¶ 34). Thus, the Plaintiff sues these Doctors, in part, for a delay in getting a medical device, which the Plaintiff, himself, unilaterally decided provided him with no relief.

Accordingly, the Plaintiff cannot prove that any alleged delayed treatment or ineffective treatment proximately caused his damages. Therefore, this Court should grant summary judgment in favor of the Wexford Defendants.

**D.    Plaintiff Failed to Prove his Claim Against Wexford Health Sources, Inc.**

The Plaintiff has failed to prove his claim against Wexford Health Sources, Inc. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91(1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In order to recover against a corporate defendant under §1983, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). There are two components to this inquiry, first the Plaintiff must show that an unconstitutional policy or practice exists, and then, second, the Plaintiff must show that deliberate indifference occurred as a result of this unconstitutional policy or practice. The Plaintiff fails on both showings.

First, the Plaintiff has not produced a single Wexford policy. Rather, the Plaintiff's Complaint is based only on his own conclusory and self-serving allegations that Wexford "is more concerned in cost-cutting policies" than treatment. (SOF at ¶13). The Plaintiff has no policy that he can show to the Court supporting that statement. As to practice, the above-detailed

treatment shows that Wexford actually approved increasingly expensive treatment options (pain medication followed by pain injections followed by outside medical consultation with an orthopedic surgeon) in response to the Plaintiff's complaints, which amounted to a common ankle sprain. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford had an unconstitutional policy or practice, but could produce no evidence of any such policy or practice. 615 Fed. Appx. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that the prisoner's self-serving idea of a policy or practice that promoted delaying medical treatment was senseless because it would actually end up costing Wexford more money in the long-term. *Id.*

As in *Montague,* the Plaintiff has produced no policy and, instead, asks the Court to adopt his self-serving opinion that Wexford must have a policy or practice to render ineffective medical treatment to save costs, even though such a policy would end up costing Wexford more money in the long-term through either expensive additional treatment needed due to the delay or expensive § 1983 litigation.

Second, even if such a policy existed, it is clear from the undisputed record of treatment that the care detailed above that the medical attention this Plaintiff received does not establish a claim of deliberate indifference. If there is no underlying constitutional claim, the Plaintiff cannot show that his alleged injury was the result of the corporation's official policy or widespread practice. See *Stallings v. Hardy*, 11 c 8107. 2013 U.S. Dist. LEXIS 153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013)(holding that because the court found that the individual defendants did not violate Plaintiff's Eighth Amendment rights, "Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners."). Therefore, the Plaintiff's claims against Wexford fail.

14

**E.      Plaintiff's claim for punitive damages fails**

The Plaintiff's claim for punitive damages fails because he has not proven any set of facts that would allow him to recover punitive damages.  Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011).

All three Doctors testified, unequivocally, that they never intended to cause the Plaintiff any harm, they only intended and desired to secure the best possible medical outcome for this Plaintiff, and they complied with all applicable community medical standards of care for treating this inmate.  (SOF at ¶¶ 41-42).  Their conduct was not motivated by an evil intent and does not exhibit the required callousness.  Therefore, even if this Court finds against the Wexford Defendants on the Plaintiff's deliberate indifference claim, it should still grant Summary Judgment to the Wexford Defendants on the punitive damages issue.

## IV.  CONCLUSION

The Plaintiff has failed to produce any evidence sufficient to show that Wexford, Dr. Funk, Dr. Carter, or Dr. Obaisi acted with deliberate indifference toward the Plaintiff's ankle sprain.  The level of proof required in a deliberate indifference claim is high and the undisputed joint factual record established that this Plaintiff received continuous, copious, and comprehensive medical care for his sprained ankle.  There is no set of facts through which a jury could find that the Wexford Defendants acted with constitutional deliberate indifference towards this Plaintiff.  According, Wexford, Dr. Funk, Dr. Carter, and Dr. Obaisi are entitled judgment, in their favor, as a matter of law.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., ARTHUR FUNK, M.D., IMHOTEP CARTER, M.D., and SALEH OBAISI, M.D., respectfully request that this Honorable Court enter an Order granting them Summary Judgment and dismissing the Plaintiff's Complaint, with prejudice, plus costs, and any other relief that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ James F. Maruna
    One of the Attorneys for Defendants,
    WEXFORD HEALTH SOURCES, INC.,
    ARTHUR FUNK, M.D., IMHOTEP CARTER,
    M.D., and SALEH OBAISI, M.D.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2016 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ James F. Maruna</u>

8228580 JMARUNA;JMARUNA